16-3555
## IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

| | | |
|---|---|---|
| MATTHEW STEPHEN AKINS, | ) | |
| Plaintiff-Appellant, | ) | Appeal from the United States District Court |
| | ) | for the Western District of Missouri, Central |
| | ) | Division |
| vs. | ) | |
| | ) | The Honorable Nanette Laughrey, Judge |
| DANIEL KNIGHT, in his official | ) | Presiding |
| and individual capacity, and | ) | |
| STEVEN BERRY, in his official | ) | Case No.: 2:15cv04096-NKL |
| and individual capacity, and et al., | ) | |

## **PETITIONER MATTHEW STEPHEN AKINS, RULE 35 STATEMENT**

Appellant Matthew Akins, petition(s) for a rehearing en banc and/or a panel rehearing under Fed. R. App. P. 35 and/or 40. In a decision rendered July 25, 2017, the panel with Circuit Judges Loken, Murphy, and Melloy affirmed the grant of summary judgment in the appeal that the Appellees City of Columbia, Boone County, Missouri, Daniel Knight, Steven Berry, Brent Nelson, Kenneth Burton, Rob Sanders, Eric Hughes, Roger Schlude, and Michael Palmer were entitled to summary judgment for violations of Akins' First, Second, Fourth and Fourteenth Amendment rights under the United States Constitution.

The panel affirmed Judge Laughrey's rulings with its ruling focusing on the motion to disqualify Judge Laughrey for bias under either 28 U.S.C § 144 and/or 28 U.S.C. § 455.

This Court has ruled contrary to all the canons of statutory construction and precedent when it found that requirement for transfer to different judge under 28 U.S.C. § 144 for the motion to disqualify Judge Laughrey was discretionary where the statute specifically commanded a motion to disqualify for bias made pursuant to his law be heard by a

different judge than the trial judge about whom the motion was filed.

28 U,S.C. § 144: Whenever a party to any proceeding in a district court makes and files a timely and <u>sufficient affidavit</u> that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein<u>, but another judge **shall be** assigned to hear such proceeding</u>. . . . It shall be accompanied by a certificate of counsel of record stating that it is made in good faith. **(emphasis added).**

In addition, **w**here Judge Laughrey's husband Chris Kelly held an office of trust with the Appellee City of Columbia as Chair of the Mayor's Infrastructure Task Force during the pendency of Akins' litigation. A position that caused the *Columbia Heartbeat* a local news and opinion forum to contemporaneously allege, On 09/24/15, Columbia Heart Beat reported, "<u>SMH in CoMo: Stormy Mayor, biased Judge this week's leadership blunders,</u> . . . Federal Judge Nanette Laughrey ruling <u>for City Hall in the Opus Student apartment lawsuit</u>: . . . My head is shaking over the Laughrey decision for a simple reason: her husband, Chris Kelly, chairs the Mayor's Infrastructure Task Force, a job he landed after leading organized efforts to raise utility rates this year<u>.</u> On infrastructure, Kelly has become City Hall's #1 cheerleader. That his wife is hearing Columbia's most high-profile infrastructure legal case, maybe in history, seems like appallingly bad judgment." Further, in Akins' case evidence of Citizen For Justice reporting by Akins relating to Judge Laughrey's rulings in the *Williams* matter regarding the actions of the Columbia Police Department was material to the case. Appellant submitted evidence that

2

would have impugned the Judge's reputation for fairness and impartiality before a jury creating an inherent conflict for the Court at trial. And numerous other bias grounds as specified in Akins' motions to disqualify.

    This Court cites *U.S. v Gamboa*, 439 U.S. 796, 817 (8th Cir. 2006) but that case is inapplicable since that question is in regard to a court's failure to sua sponte recuse itself, where no motion to disqualify was filed in *Gamboa*. In the *Akins* matter the 2nd Motion to Disqualify Judge Laughrey was filed pursuant to the provisions of 28 U.S.C. § 144 and required her to transfer that motion to a different judge for ruling on that motion to disqualify for bias. Which motion Judge Laughrey did not transfer and denied herself asserting not even an appearance of bias existed. This Court also cites a similar case to *Gamboa* of a sua sponte recusal issue, where no motion or request was filed before the trial judge in *U.S. v Larsen*, 439 U.S. 796, 817 (8th Cir. 2006) due to the judge's statements from the bench. Neither Larsen or Gamboa are applicable to the Akins fact situation and the specific commands of this federal law under 28 U.S.C. § 144.

    Further, this Circuit in affirming the District Court's ruling, despite the District Court's failure to conduct a forum analysis as required by the this Circuit's holding in *Bowman v. White*, 444 F.3d 967, 975 (8th Cir. 2006). That forum analysis and the application of either a rational basis, intermediate or strict scrutiny review was wholly lacking from the District Court's findings and this Court's affirmation. A strict scrutiny analysis should have been conducted in the *Akins* matter requiring the government to

3

establish a compelling justification that was narrowly tailored to justify the prohibition of Akins from recording the filing of a petition of grievance and/or the censoring of his posts on the Police Facebook page and policy change censoring any future non-police posts on this designated public forum. No such analysis and findings were made by a federal court in the Akins matter to justify that there was no First Amendment right to film the police in public places and/or post on a designated public forum Facebook Page.

This Court affirmed District Court ruling which stated, "Further, he has no constitutional right to videotape any public proceedings he wishes to. *See Rice v. Kempker*, 374 F.3d 675, 678 (8th Cir. 2004) "[N]either the public nor the media has a First Amendment right to videotape, photograph, or make audio recordings of government proceedings that are by law open to the public." (Add p 59) The Eighth Circuit is the only circuit to find that there is no First Amendment right to film the police in public. Six other circuits (1st, 3d, 5th, 7th, 9th and 11th) that have ruled on this issue have all reached contrary holdings on this First Amendment right to film police officials in public. Until this holding for previous two decades, with unanimity, federal courts have recognized that the First Amendment protects the right to record police officers/officials performing their duties in public. Indeed, every other federal court of appeals to address the issue on the merits has acknowledged the existence of this First Amendment right until this Court affirmed the District Court's contrary ruling making it this Circuit's law. Most recent protection of the First Amendment was by the Third Circuit in *Fields v City of Philadelphia,* (3d Cir. (16-1650) on July 07, 2017) which found that the First

4

Amendment protects the act of photographing or otherwise recording police officers conducting their official duties in public. The Fifth Circuit in *Turner v Driver*, 848 F.3d 678 (5th Cir. 2017) Concluded that First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions. Every other federal court of appeals to address the issue on the merits has found contrary to this Circuit and acknowledged the existence of this First Amendment right. See, e.g., *Bowens v Superintendent of Miami S. Beach Police Dept.*, 557 Fed. App'x 857, 863 (11th Cir 2014) ("Citizens have 'a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct."(quoting *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000))); *Gericke v Begin*, 753 F.3d 1, 7 (1st Cir. 2014) ("the Constitution protects the right of individuals to videotape police officers performing their duties in public"); *Adkins v. Limtiaco*, 527 Fed. App's 721, 722 (9th Cir. 2013) (holding that allegations that plaintiff was arrested in retaliation for taking photos of the police in public stated a claim for First Amendment retaliation); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 599-600 (7th Cir. 2012) (holding that a statute that would prohibit recording of police officers with a cell phone violated the First Amendment); *Glik v. Cunniffe*, 655 F.3d 78, 79 (1st Cir 2011) (holding "unambiguous" the constitutional right to videotape police activity); *Iacobucci v. Boutler*, 193 F.3d 14, 25 (1st Cir. 1999) (holding that filming public officials in a public area "was done in the exercise of [Plaintiff's] First Amendment Rights:); *Fordyce v City of Seattle*, 55 F.3d 436m 439 (9th

5

Cir 1995) (holding that recording police conduct fell within the "First Amendment right to film matters of public interest"); see also *Schnell v City of Chicago*, 407 F.2d 1084, 1085-86 (7th Cir 1969) (reversing dismissal of action by news photographers who covered demonstrations at the 1968 Democratic National Convention in Chicago against the police for "interfering with plaintiffs" constitutional right to . . . photograph news events").

In the *Akins* matter, appellant at the request of a citizen activist, who was known for his protests against institutional racism by the courts and law enforcement, was documenting this peaceably assembled citizen, file his petition of grievance. At the point designated by the government to petition the government for a redress of grievances in the police department lobby. When this citizen was filing his misconduct complaint against a police officer, acting pursuant to City of Columbia policy, police officials ordered Akins to immediately cease filming the filing of this petition of grievance with the government and Akins complied with that order. The First Amendment provides: Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; **or the right of the people peaceably to assemble, and to petition the government for a redress of grievances**. (emphasis added)

In addition, this Court affirmed the District Court ruling, despite a lack of forum analysis, when it affirmed the finding that, "his links to the Columbia Police Department's Facebook page were treated the same as everyone else's and there is no

6

constitutional right to unlimited posting." (Add p 60). The fact that Matt Akins of Citizens For Justice had previously made six video report postings to this designated public forum using the "post by others" option on the City of Columbia Police Department Facebook page in the previous three months was ignored by the District Court. Chief Burton and the Columbia Police Officers' Association were advocating a substantive weakening of the oversight ability of the Citizens' Police Review Board (CPRB). This debate was contemporaneous with the censoring of Appellant Matt Akins of Citizens For Justice, filed six reports on this forum. Akins was advocating for a robust oversight by CPRB during this public debate. Akins' sixth report made on the City of Columbia Police Department's Facebook page was about a misconduct hearing involving CPRB in "Officer Lori Simpson testifies why she turned off her body mic off during Derek Billups incident (ECF 92, Exhibit# 21 App. video supplement)". It was shortly after this report was posted on the Police Facebook page that all non-police reports were censored and removed from public view and the "Post by Others" option eliminated from this designated public forum.

The U.S. Supreme Court in *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) (comparing social media to traditional public fora such as parks and streets). "A fundamental principle of the First Amendment is that all persons have access to places where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context. A basic rule, for example, is that a street or a park is a quintessential forum for the exercise of First

7

Amendment rights. See *Ward* v. *Rock Against Racism*, 491 U. S. 781, 796 (1989). Even in the modern era, these places are still essential venues for public gatherings to celebrate some views, to protest others, or simply to learn and inquire. While in the past there may have been difficulty in [Page 8] identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the "vast democratic forums of the Internet" in general, *Reno* v. *American Civil Liberties Union*, 521 U. S. 844, 868 (1997), and social media in particular." *Id*., 1737-8. In *Packingham*, the Supreme Court struck down as a violation of the First Amendment a state statute, under an intermediate scrutiny analysis, that prohibited convicted sex offenders from accessing the internet.

    A District Court for the Eastern District of Virginia in *Davison v Loudon Cnty. Bd. Of Supervisors* (E.D. Va. 2017 (July 25, 2017)) This District Court found impermissible viewpoint discrimination when a citizen was blocked from the Chair of Loudon Cnty. Bd. of Supervisors Facebook page. In *Davison* the court stated, "If the Supreme Court's First Amendment jurisprudence makes anything clear, it is that speech may not be disfavored by the government simply because it offends. *See Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017) (listing cases). Here, as discussed above, Defendant acted in her governmental capacity. Defendant's offense at Plaintiff's views was therefore an illegitimate basis for her actions - particularly given that Plaintiff earned Defendant's ire by criticizing the County government. Indeed, the suppression of critical commentary regarding elected officials is the quintessential form of viewpoint discrimination against

which the First Amendment guards. *See Rossignol*, 316 F.3d at 521-22. By prohibiting the Plaintiff from participating in her online forum because she took offense at his claim that her colleagues in the County [Page 30] government had acted unethically, Defendant committed a cardinal sin under the First Amendment." *Id.,* 29-30.

Matthew Akins participation in a public debate using the designated public forum of the City of Columbia Police Department's Facebook page to advocate a position with regard to the strengthening of the oversight function of the Citizens' Police Review Board. A position that placed him at odds with Chief Burton and the City of Columbia administration and many of its police officers which was contemporaneous with the decision to censor Akins' six posts and remove them from the Police Facebook page and prohibit/censor any future posts not approved of by the Columbia Police administrator of the page.

This removal, without notice or an opportunity for a hearing, of Akins' six posts from the Columbia Police Department Facebook Page also violated his First and Fourteenth Amendment rights.

## CONCLUSION

This Court's finding that 28 U.S.C. § 144's statutory command of "<u>but another judge shall be assigned to hear such proceeding</u>" was a discretionary decision of the court against whom the motion to disqualify for bias was filed and did not require a transfer to a different judge for a ruling on the motion to disqualify for bias. Despite the mandatory "**shall**" requirement to transfer to a different judge as specified by law. This Circuit's

9

statutory interpretation is unsupported by any of the canons of statutory construction or the precedent cited by this Court. Further in regard to First Amendment issues, this holding is contrary to this Circuit's decision in *Bowman,* where neither the District Court nor this Court made any forum analysis to thereafter apply the appropriate level of scrutiny to such determinations. No such analysis with the required associated scrutiny was applied by a federal court to the First Amendment issues in the *Akins* matter. This Circuit's affirmation that there is no First Amendment right to film the police in public is contrary to every other federal circuit court of appeals to decide this issue on the merits. Specifically the 1st, 3d, 5th, 7th, 9th and 11th as cited above. Further, this Circuit's affirmation of the District Court's censorship of designated public forum of the City of Columbia Police Facebook Page is contrary to the well established precedent of the U.S. Supreme Court and every other circuit to have decided this First Amendment issue on the merits and all these matters and as previously submitted in the case in chief should be reconciled by rehearing with controlling precedent.

Respectfully submitted,

_____/s/ Stephen Wyse____
Stephen Wyse, MO Bar # 49717
Admitted before the U.S. Court of Appeals for the Eighth Circuit
609 E. Broadway, Columbia, MO 65201
(573) 449-7755, Fax (573)449-7557
e-mail: swyse@wyselaw.com
Attorney for Matthew Stephen Akins Appellant

10

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that this Corrected Petition for rehearing contains 2,623 words does not exceed the 3,900 words or the 15 pages permitted by Rule, not including cover page, signature block and certificate of service and compliance, and was timely filed with this Court on the 9th day of August 2017, and thereafter automatically served upon all parties by ECF filing this same date.

       */s/ Stephen Wyse*
Stephen Wyse, MO Bar # 49717